OPINION *Page 2 
{¶ 1} Appellant Valerie Howard ("Mother") appeals the November 27, 2006 Judgment Entry entered by the Stark County Court of Common Pleas, Juvenile Division, which terminated her parental rights, privileges, and responsibilities with respect to her minor daughter, and granted permanent custody of the child to Appellee Stark County Department of Job and Family Services ("the department").[1]
 STATEMENT OF THE FACTS AND CASE {¶ 2} On November 21, 2005, Mother gave birth to a daughter, Madilyn Davis. Two days later on November 23, 2005, the department filed a Complaint, alleging Madilyn to be a dependent and neglected child. The Complaint was based upon the department's prior involvement with Mother, which resulted in Mother's parental rights, privileges, and responsibilities with respect to her two other children being terminated and the department's receiving permanent custody of those children. Additionally, Mother tested positive for cocaine and marijuana during her pregnancy with Madilyn. The trial court granted temporary custody of Madilyn to the department following a shelter care hearing on November 29, 2005. At the adjudicatory hearing on February 10, 2006, the department amended the Complaint to delete all allegations of neglect. The trial court adjudicated Madilyn to be dependent and continued temporary custody with the department. On August 11, 2006, the department filed a Motion for Permanent Custody.
 {¶ 3} The alleged father, Daniel Davis, did not establish paternity. At the adjudicatory hearing, Davis denied paternity and stated he would not participate in any *Page 3 
case plan. Davis did not visit the child or have any contact with her during much of her life. Davis had not had any contact with Madilyn in the ninety days prior to the permanent custody hearing on October 10, 2006. The alleged father made no attempts to comply with any case plan for reunification. No other person claiming to be the father of Madilyn appeared at any hearing in this matter.
 {¶ 4} The following evidence was adduced at the permanent custody hearing on October 10 and 25, 2006.
 {¶ 5} Adrienne Chenault, the family service worker assigned to the case, testified Mother's case plan included completing a psychological evaluation and following all recommendations; establishing paternity; obtaining stable and appropriate housing and employment; completing parenting skills classes through Goodwill; and submitting to a substance abuse assessment at Quest Recovery Services and following all treatment recommendations. Mother was referred to Northeast Ohio Behavioral Health for a psychological evaluation, but failed to complete the assessment. Mother underwent an alcohol and drug assessment at Quest, but was subsequently terminated from the program due to noncompliance. Mother made an attempt to return to Quest in July, 2006, but then failed to show up for her appointment. Mother failed to comply with orders for urine screens, frequently failing to appear. Mother tested positive for cocaine on two occasions and admitted to using marijuana when tested just prior to the permanent custody hearing. Chenault remarked Mother had not been clean for any substantial amount of time.
 {¶ 6} With respect to housing and employment, Mother failed to satisfy those objectives. Chenault visited Mother's current address and found such was not *Page 4 
independent housing, but rather Mother's boyfriend's house. Mother has never established independent housing or been responsible on a lease or anything of that nature. Mother was employed on and off during the pendency of the action. When she did have a job, she was not able to maintain it for a significant period of time.
 {¶ 7} Chenault described Mother's visitation as consistent "overall". She added there were some lapses in visitation when Mother missed an extended amount of time. Mother routinely left the visits early. Chenault concluded Mother had not complied with the case plan for reunification.
 {¶ 8} The trial court proceeded to the best interest portion of the hearing. Chenault testified Madilyn was currently placed in a foster home with her two older siblings. The foster parents have adopted Madilyn's two siblings and are willing to adopt Madilyn. Chenault stated Madilyn is well adjusted and bonded with her sisters and the foster parents. Madilyn is a Caucasian child with no physical or developmental disabilities at this time. The department did investigate relative placement for Madilyn, however, such housing was not appropriate.
 {¶ 9} The trial court filed Findings of Fact and Conclusions of Law on November 27, 2006. The trial court found, notwithstanding reasonable case planning and diligent efforts by the department, Mother failed continuously and repeatedly to substantially remedy the conditions which caused Madilyn to be removed from her home. The trial court further found Madilyn could not and should not be placed with Mother within a reasonable period of time. The trial court also noted Mother's parental rights, privileges, and responsibilities with respect to two other children had been terminated in prior court proceedings. Via Judgment Entry filed November 27, 2006, the trial court terminated *Page 5 
Mother's parental rights, privileges, and responsibilities with respect to Madilyn, and granted permanent custody of the child to the department.
 {¶ 10} It is from this judgment entry Mother appeals, raising the following assignments of error:
 {¶ 11} "I. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 12} "II. THE TRIAL COURT ABUSED ITS DISCRETION BY RULING THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY GRANTING PERMANENT CUSTODY TO SCDJFS."
 {¶ 13} This appeal is expedited and is being considered pursuant to App. R. 11.2(C).
 I, II {¶ 14} Because Mother's assignments of error are interrelated, we shall address them together. In her first assignment of error, Mother maintains the trial court's finding Madilyn cannot or should not be placed with her was against the manifest weight of the evidence. In her second assignment of error, Mother asserts the trial court abused its discretion in finding the best interest of Madilyn would be served by granting permanent custody to the department.
 {¶ 15} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments *Page 6 
supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr.
(1978), 54 Ohio St.2d 279, 376 N.E.2d 578.
 {¶ 16} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing, and provide notice, upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.
 {¶ 17} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 18} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. *Page 7 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.
 {¶ 19} If the child is not abandoned or orphaned, then the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R .C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.
 {¶ 20} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.
 {¶ 21} In accordance with R.C. 2151.414, the department prepares and files a case plan for each case in which it is involved. The case plan includes objectives deemed necessary for reunification, when appropriate. The department must put forth a good faith effort to initiate and implement the plan, and the parents have a duty to complete the objectives with due diligence. R.C. 2151.419 mandates the agency make *Page 8 
reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the home, or make it possible for the child to return home safely. The statute assigns the burden of proof to the agency to demonstrate it has made reasonable efforts. R.C. 2151.419 provides exceptions to this requirement. As relevant herein, R.C. 2151.419 provides:
 {¶ 22} "(2) If any of the following apply, the court shall make a determination that the agency is not required to make reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the child's home, and return the child to the child's home:
 {¶ 23} (e) The parent from whom the child was removed has had parental rights involuntarily terminated pursuant to section 2151.353, 2151.414, or 2151.415 of the Revised Code with respect to a sibling of the child."
 {¶ 24} Mother contends the evidence established she complied with the requirements of her case plan by providing consistent urine screens, obtaining stable housing and continued employment. Mother's assertion is belied by the evidence presented at the permanent custody hearing. Adrianne Chenault testified Mother had not completed or complied with many of the requirements of her case plan. Mother never underwent a psychological evaluation. Although Mother had a substance and drug abuse evaluation with Quest, she was subsequently terminated from the program due to noncompliance. Mother frequently failed to appear for urine screens, tested positive for cocaine on two occasions, and admitted to using marijuana when tested in October, just prior to the hearing. At the case worker's urging, Mother reenrolled at Quest, but failed to attend the session. Mother did not have independent housing, *Page 9 
rather she lived with her boyfriend. Mother's employment had been sporadic, and she had not maintained a job for any significant period of time.
 {¶ 25} Based upon the foregoing, we find the trial court's finding Madilyn cannot or should not be place with Mother is not against the manifest weight of the evidence.
 {¶ 26} With respect to the best interest determination, Chenault testified Madilyn is a one year old Caucasian child with no physical or developmental disabilities. The child does not have any behavioral or psychological problems. Currently, Madilyn is placed in a foster home with her two older siblings and she has been there since birth. She is bonded with her sisters, who have been adopted by the foster parents, and with the foster parents. The foster family has expressed an interest in adopting Madilyn.
 {¶ 27} Based upon the foregoing, we find the trial court's finding it was in Madilyn's best interest to grant permanent custody to the department was not against the manifest weight of the evidence.
 {¶ 28} Mother's first and second assignments of error are overruled. *Page 10 
 {¶ 29} The Judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
 By: Hoffman, P.J. Wise J. and Edwards, J. concur. *Page 11 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the Judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to Appellant.
[1] The alleged father, Daniel Davis, is not a party to this appeal. *Page 1